360 A.2d 681

Edward J. BELL and Marie J. Bell, his wife, on behalf of themselves and all others similarly situated, Appellants,

v.

BENEFICIAL CONSUMER DISCOUNT COMPANY, a corporation.

Superior Court of Pennsylvania.

Argued April 12, 1976.

Decided June 28, 1976.

194

196

James F. Israel, Gerald W. Weaver, Bagley, Weaver & Sydor, R. Kenneth Willman, Pittsburgh, for appellants.

J. Tomlinson Fort, Reed, Smith, Shaw & McClay, Pittsburgh, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, Van der VOORT, and SPAETH, JJ.

SPAETH, Judge:

This case is before us on remand from the Supreme Court to decide whether appellants have met the minimum requirements for maintaining a class action.

Appellants brought a class action pursuant to Pa.R.Civ. P. 2230, alleging that appellee had failed to record the satisfaction of mortgages as required by statute, and that it was therefore liable to pay the statutory penalty.[1] Appellee, contending that the action was not a proper class action, filed preliminary objections under Pa.R.Civ. P. 1017(b)(5). The lower court sustained the objections, dismissing the class aspects of the action, but allowing the named plaintiffs to proceed in their individual capacities. An appeal from that order was taken to this court, which by *per curiam* order granted appellee's motion to quash the appeal and then denied appellants peti-

---

1. The Act of May 28, 1715, 1 Sm.L. 94, §§ 9 and 10, 21 P.S. §§ 681 and 682, as amended by Act of July 31, 1968, P.L. 866, § 1, 21 P.S. § 682 (Supp.1975), provides:

§ 681. Satisfaction of mortgage on margin of record

Any mortgagee of any real or personal estates in this province, having received full satisfaction and payment of all such sum and sums of money as are really due to him by such mortgage, shall, at the request of the mortgagor, enter satisfaction upon the margin of the record of such mortgage recorded in the said office, which shall forever thereafter discharge, defeat and release the same; and shall likewise bar all actions brought, or to be brought thereupon.

§ 682. Fine for neglect

And if such mortgagee, by himself or his attorney, shall not, within forty-five days after request and tender made for his reasonaole charges, return to the said office, and there make such acknowledgment as aforesaid, he, she or they, neglecting so to do, shall for every such offence, forfeit and pay, unto the party or parties aggrieved, any sum not exceeding the mortgage-money, to be recovered in any Court of Record within this Commonwealth, by bill, complaint or information. [Footnotes omitted.]

tion for reconsideration.[2] The Supreme Court granted appellants' petition for allowance of appeal. Reversing, the Supreme Court held that a pre-trial order dismissing a class action is an appealable final order. The order quashing the appeal was therefore vacated and the case remanded to this court for a determination on the merits. *Bell v. Beneficial Consumer Discount Co.*, 465 Pa. 225, 348 A.2d 734 (1975).

The propriety of a class action in Pennsylvania is controlled by Pa.R.Civ.P. 2230, which provides:

(a) If persons constituting a class are so numerous as to make it impracticable to join all as parties, any one or more of them who will adequately represent the interest of all may sue or be sued on behalf of all, but the judgment entered in such action shall not impose personal liability upon anyone not a party thereto.

(b) An action brought on behalf of a class shall not be dismissed, discontinued or compromised nor shall a voluntary non-suit be entered therein without the approval of the court in which the action is pending.

Application of this rule involves two subsidiary decisions: whether the action was properly initiated, and whether the procedure used to challenge the class was proper. These decisions made, the court may determine the propriety of the action as a class action.[3]

## I—INITIATING THE CLASS ACTION

█ Our Supreme Court has recently set forth the minimum requirements for maintaining a class action:

(1) [the class representative] is a member of the class;

2. *Bell v. Beneficial Consumer Discount Co.*, 231 Pa.Super. 1, 327 A.2d 874 (1974); dissenting opinion of Spaeth, J., in which Hoffman, J., joined, 231 Pa.Super. 1, 331 A.2d 902 (1975).

3. In undertaking the ensuing discussion we have been greatly helped by the unusually comprehensive opinion filed by the lower court, Silvestri, J.

(2) the class consists of persons "so numerous as to make it impracticable to join all as parties;" (3) "he will adequately represent the interests of all class members;" (4) his interests are consonant with all members of the class; (5) there is a common issue shared by all class members which can be justly resolved in a single action; and (6) the relief sought is beneficial to all class members.

*Klemow v. Time, Inc.*, 466 Pa. 189, ——, 352 A.2d 12, 15, 16 (1976) (Footnotes omitted).

Before the action moves beyond the pleading stage, the complaint must contain averments establishing that these requirements have been met. *Klemow v. Time, Inc., supra.*

In many cases this will not initially be possible, for the information regarding the class will be, as it was in this case, in the hands of the opposing party and therefore available to the class representative only by discovery following the commencement of the action.[4] To require that the minimum requirements set forth in *Klemow* must all be contained in the initial complaint would be to defeat many class actions at the outset. Therefore an abridged complaint may be filed to initiate a class action. The class representative will then be afforded a reasonable opportunity to amend the complaint to aver the class requirements. "[If] after [such] a reasonable opportunity, [he cannot] define and limit the class so that the matter will move to trial [he] will be found not to have sustained the burden necessary to proceed as a class." *Klemow v. Time, Inc., supra* at ——, 352 A.2d at 15–16.

4. Discovery on the propriety of a class action usually occurs after preliminary objections. See Section II, *infra.* A plaintiff may, however, ask for leave of court to engage in discovery immediately after he commences the action, whether by a writ of summons or complaint. Pa.R.Civ.P. 4005(a) and 4007(b). *See* Goodrich-Amram §§ 4005(a)–5 and 4007(b)–2.

The requirements that the initial abridged complaint must meet are set forth in *Penn Galvanizing v. Philadelphia*, 388 Pa. 370, 376–77, 130 A.2d 511, 514–15 (1957):

> In a class action the complaint should be so titled and the pleadings so framed as to identify it as a class action and to give some indication of the class being represented . . . . This is not a mere formalistic requirement. The complaint should be such that its character as a class action rather than an individual suit be manifest on its face to a defendant and to the court.

■ The complaint here more than meets these requirements. It avers: that the action is brought by appellants on behalf of themselves and a class that they describe; that although appellants are unable to state the exact number of class members without discovery of appellee's books and records, the members are so numerous as to make it impracticable to bring them all before the court; that there are damage questions of law and fact common to the class that predominate over any questions affecting individual members only; that appellants' claim is typical of the claims of the class; that appellants will fairly and adequately protect the interests of the class; and that the class action is superior to other available methods for adjudicating the controversy.[5] The complaint then goes on to allege the facts pertinent to appellants' personal claim. The action was therefore properly initiated.

## II—CHALLENGING THE CLASS ACTION

■ The decision whether a class action is proper should be made as early in the proceedings as practicable.

---

5. Whether or not superiority to other available methods is a requirement under the Pennsylvania class action rule has not yet been decided. *Klemow v. Time, Inc.*, 466 Pa. 189, ——, n. 14, 352 A.2d 12, 16, n. 14 (1976).

*Buchanan v. Brentwood Federal Savings and Loan Ass'n,*
457 Pa. 135, 161, 166, n. 7, 320 A.2d 117, 131, 134, n. 7
(1974) (concurring and dissenting opinion of Pomeroy,
J.); *cf.* Fed.R.Civ.P. 23(c)(1). What procedure should
be used to make the challenge, however, is unclear since
the Pennsylvania Rules of Civil Procedure contain no
express provision for the challenge.

In this case, appellee filed preliminary objections to
the complaint in accordance with Pa.R.Civ.P. 1017(b)
(5). The objections averred that the action is not prop-
erly a class action because the class is not so numerous
as to make it impracticable to join all as parties, appel-
lants do not adequately represent the interests of the
class, and no common issues of fact and law exist. The
parties then engaged in discovery; appellee took the depo-
sitions of both appellants and their attorneys, and appel-
lants directed written interrogatories to appellee. Ar-
gument on the preliminary objections was held, and the
lower court sustained the objections without leave to
amend on the ground that the action was not properly a
class action.

Pa.R.Civ.P. 1017(b)(5) provides for a preliminary ob-
jection in the form of "a petition raising the defense of
lack of capacity to sue, pendency of a prior action, non-
joinder of a necessary party or misjoinder of a cause of
action." Since neither the Rules nor the appellate courts
have provided any guidance, appellee may have chosen
this procedure because it has been recommended by the
commentators. Goodrich-Amram, for example, states
that:

> Class actions in Pennsylvania are part of the topic of
> Joinder of Parties and the class action device is only a
> joinder device under the designated special circum-
> stances, namely, where the conventional joinder under
> Rule 2229 is unavailable. Accordingly, any attack on
> the propriety of the class action, on the part of a de-

fendant, should be by the same procedures which are used when a defendant asserts an improper joinder under Rule 2229 . . . .

3 Goodrich-Amram § 2230 (Supp.1976).

Thus where the class lacks the requisite common issue or adequate representation, in the absence of which the class members must join in the action in order to assert their individual rights, there would be a defect of nonjoinder.[6] That defect is raised by preliminary objection under Rule 1017(b)(5).

According to Anderson, however, there are some instances in which the preliminary objection of nonjoinder may not be appropriate:

> In some instances, the holding that there is not a proper class action will in substance mean that the persons who are before the court are misjoined and that they should be suing or being sued separately instead of in one action. In such case, the remedy is the severance of the parties, as in the case of misjoinder of permissively joined parties generally.

4 Anderson Pa.Civ.Practice § 2230.17 (1962).

Since there is no provision in Rule 1017 for a preliminary objection on the ground of misjoinder, this defect must be raised by petition for severance of the parties. *See* Pa.R.Civ.P. 213(b) and 2232(b).

Obvious problems—both practical and theoretical are raised by these comments.

First, a class challenger may have difficulty determining whether he should file a preliminary objection for nonjoinder or a petition for severance for misjoinder; there may be situations that do not neatly fit into either category.

---

**6.** Delle Donne and Van Horn, "Pennsylvania Class Actions: The Future in Light of Recent Restrictions on Federal Access; 78 D.L.R. 460, 507–08 (1974).

■ Second, filing a preliminary objection and filing a petition for severance have significantly different procedural consequences. A preliminary objection is a pleading under Rule 1017; a petition for severance is not. The party filing the preliminary objection may therefore delay his next pleading until resolution of objection but the party filing the petition for severance is not excused from filing the next pleading within the prescribed time. *See* Pa.R.Civ.P. 1017, 1026, 1028. To require a responsive pleading on the merits before the validity of the class has been determined may put the challenging party to unnecessary expense and may make intelligent pleading difficult. Furthermore, amendment procedures are' less burdensome when preliminary objections are used. *See* Pa.R.Civ.P. 1028(c).

Third, and most significant, the opinion of the Supreme Court in the present case repudiates the theory that the class action is "only a joinder device":

> When an action is instituted by a named individual on behalf of himself and a class, the members of the class are more properly characterized as *parties* [7] to the action. A subsequent order of a trial court allowing an action to proceed as a class action is *not a joinder of the parties not yet in the action.* The class is in the action until properly excluded.

> *Bell v. Beneficial Consumer Discount Co., supra* at 348 A.2d at 736. (Emphasis added.)

With the theoretical base for the use of joinder procedures thus destroyed, their application in practice becomes inappropriate. Moreover, the use of the two procedures suggested by the commentators—a preliminary objection for nonjoinder and a petition for severance for misjoinder—is theoretically inconsistent. A nonjoinder objection rests on the premise that the class members are

7. Class members were also referred to as "parties" in *Lee v. Child Care Service Delaware County Institution District*, 461 Pa. 641, 645, n. 1, 337 A.2d 586, 588, n. 1 (1975).

not joined, a misjoinder petition on the premise that they are, albeit incorrectly.[8]

 For these reasons, the appropriate procedure is to challenge the propriety of the class action under Rule 1017(b)(2). This rule provides for a preliminary objection in the form of "a motion to strike off a pleading because of lack of conformity to law or rule of court."[9] Thus if an action brought on behalf of a class does not conform to the law regarding class actions, the class action allegation can be struck, and the action can continue as an individual action. *See Luitweiler v. Northchester Corp.*, 456 Pa. 530, 535 n. 7, 319 A.2d 899, 903, n. 7 (1974).

██ The motion to strike provides a uniform method to be used in all class actions and avoids the unequal consequences of the use of two procedurally different devices. An early determination of the class issue is also assured, and discovery may be had prior to discovery on the merits. Rule 1028(c) provides that "[t]he court shall determine promptly all preliminary objections. If an issue of fact is raised, the court shall take evidence by depositions or otherwise." Whether the class is the sort of class required by the law regarding class actions is an issue of fact. The court should therefore resolve the issue "by receiving evidence thereon through interrogatories, depositions or an evidentiary hearing." *Luitweiler v. Northchester Corp., supra* at 435, 319 A.2d at 902.

 In holding that the motion to strike is the appropriate procedure for challenging a class action, we are not holding that appellee here is barred because the

8. An assumption that the class members are joined is also in direct contradiction to Rule 2230, which is designed for situations where it is "impracticable to join all as parties."

9. This procedure has been used, for example, in *Oas v. Commonwealth*, 8 Cmwlth. 118, 301 A.2d 93 (1973).

wrong procedure was used; appellee was simply using the procedure recommended at the time this suit was instituted; also, appellants did not object to the procedure. Nor are we holding that a motion to strike is the only procedure by which to challenge the propriety of a class action. To the contrary, during the course of the management of an action, facts may be learned that show that the action is not properly a class action.[10] The party opposing the class may then challenge the propriety of the action by motion for summary judgment. Pa.R.Civ.P. 1035.[11]

## III. WAS THE CLASS ACTION HERE PROPER?

Since the class action is an important social device that makes possible the effective assertion of many claims that otherwise might not be litigated,[12] decisions in favor of maintaining a class action should be liberally made.[13] Broad discretion is vested in the trial court to determine "definition of the class as based on commonality of issues and the propriety of maintaining the action on behalf of the class." *Klemow v. Time, Inc., supra*, 466 Pa. at ——, 352 A.2d at 16. Nevertheless, the minimum requirements of Pa.R.Civ.P. 2230 and of *Klemow* [14] must be met. In the case at hand the lower

10. We need not decide here whether a trial court may *sua sponte* raise the issue of the propriety of an action as a class action. Although trial courts are vested with broad discretion in determining the propriety of a class action, there are limits to their power. *Klemow v. Time, Inc., supra* (see especially n. 3).

11. This was the procedure used in *McMonagle v. Allstate Insur. Co.*, 460 Pa. 159, 331 A.3d 467 (1975).

12. The important purposes of the class action device are reiterated in the earlier opinions in this case, both by the Supreme Court, 465 Pa. 225, 348 A.2d 734 (1976), and in the dissenting opinion in this court, 231 Pa.Super. 1, 331 A.2d 902 (1975).

13. *Stern v. Mass. Indem. & Life Ins. Co.*, 365 F.Supp. 433 (E.D. Pa.1973); *Cusick v. N. V. Nederlandsche Combinatie Voor Chemische Industrie*, 317 F.Supp. 1022 (E.D.Pa.1970).

14. These requirements have been set forth in full on p. 684 of 360 A.2d, *supra*.

court imposed requirements similar to those of *Klemow*, and found the class improper.[15] We agree.

As was mentioned at the outset, appellants brought this action to collect the statutory penalty provided for in the Act of May 28, 1715, *supra*.[16] Section 9 of the Act[17] requires that a mortgagee who has received full payment must at the request of the mortgagor satisfy the mortgage of record in the appropriate Recorder of Deeds office. Section 10[18] provides that if the mortgagee does not satisfy the mortgage of record within 45 days after the mortgagor's request and tender of the satisfaction fee, the mortgagee shall "forfeit and pay" to the mortgagee "any sum not exceeding the mortgage-money."

Paragraph one of the complaint alleges that the action is brought

on behalf of themselves and as representatives of a class of present mortgagors and mortgagors during the past twenty-one years in the County of Allegheny . . . in those situations where [appellee] has recorded mortgages from members of the class to itself without the knowledge of the members of the class, and [appellee] has failed to satisfy said mortgages on the records of the Recorder of Deeds within a period of forty-five days after said member-mortgagors have paid [appellee] the debt owed to [appellee] by the individual mortgagors which failure is repugnant to and violative of [the Act of 1715].

---

15. The lower court derived its requirements from those of the old federal rule category of "spurious" class actions. That category has been rejected by our Supreme Court in *McMonagle v. Allstate Insur. Co.*, *supra*. However, the requirements were almost identical to those of *Klemow*, which was handed down a year and a half after the lower court's opinion was filed.

16. The Act is cited and quoted in footnote 1, *supra*.

17. Act of May 28, 1715, *supra*, 21 P.S. § 681.

18. Act of May 28, 1715, *supra*, 21 P.S. § 682.

Paragraph two of the complaint describes the class as follows:

individuals in the County of Allegheny who have received loans from [appellee] and upon whose property [appellee] has placed mortgages during the past twenty-one years, where [appellee] has been paid its debt but has failed to satisfy of record said mortgage within forty-five days after payment of the debt.

The complaint also alleges the following facts pertinent to appellants' personal claim. On December 17, 1971, appellants negotiated a $2,520 loan from appellee and signed a note, security agreement and mortgage.[19] No copy of the mortgage was furnished to appellants. On December 29, 1971, without notice to appellants, appellee filed the mortgage with the Allegheny County Recorder of Deeds. On April 24, 1972, appellants paid the debt in full and received the note and security agreement marked "paid." The mortgage was not satisfied of record, however, until December 27, 1972, i. e., more than 45 days after payment of the debt.

Appellants' depositions revealed additional relevant information. Appellants there stated that they had first learned of the mortgage in late November or December of 1972, after they had applied for a loan from a savings and loan association. Upon learning that their mortgage was not satisfied of record, appellants paid the satisfaction fee.

Appellant Edward Bell further testified that he knew of no one else in Allegheny County who had given appellee a mortgage that was not satisfied within the statutory period.

19. Notwithstanding this allegation in the complaint, Mrs. Bell testified in her deposition that she had not signed the mortgage and that the signature on the mortgage was not hers. This factual discrepancy is of no moment to us, however, since, as will be discussed, the crucial fact is whether she knew the mortgage, signed or unsigned, had been recorded.

In reply to appellants' interrogatories, appellee identified 53 transactions, involving persons from the Counties of Allegheny, Westmoreland, or Washington, in which loans secured by mortgages were paid but the mortgage was not satisfied of record within 45 days after payment of the loan. The answer to the third interrogatory stated that appellee had informed these mortgagors that the mortgage was to be recorded.

Three possible classes emerge from a study of the statute, the complaint, and the evidence elicited through discovery.

The first possible class is a group of mortgagors each of whom has paid the loan, requested satisfaction, and tendered the satisfaction fee, but whose mortgage was not marked satisfied of record within 45 days after the request and tender.[20] Appellants here, however, cannot properly represent this class, for they are not members, as required by *Klemow v. Time, Inc., supra,* and *McMonagle v. Allstate Insur. Co., supra.* After discovering that their mortgage had not been marked satisfied after payment, appellants requested satisfaction in late November or early December of 1972 and tendered the satisfaction fee on December 4, 1972. The mortgage was marked satisfied on December 27, 1972—less than 45 days after the request and tender.

The second possible class is the class most strongly suggested by a close reading of paragraph one of appellants' complaint. Appellants' theory seems to be

20. At least 19 mortgagors would fall within such a group, according to appellee's answers to the interrogatories. There may be more, but appellants' interrogatories were so incomplete that one cannot tell. Appellants asked what date each mortgage was marked satisfied and what date tender was made, but they did not ask what date request was made. Thus the 45-day period can be measured for those who paid the satisfaction fee, but cannot be measured for those identified in the answers to the interrogatories as required to request satisfaction but not to tender a fee. (The answers state as to a larger number of mortgagors that "[t]he date each such fee was paid" is "inapplicable."

that since they were not aware that a mortgage had been filed with the Recorder of Deeds, they were under no duty to request satisfaction and to tender the satisfaction fee; the repayment of the full debt constituted a constructive request and tender, and the duty devolved on appellee as the mortgagee to mark the record satisfied within 45 days after the repayment.[21] This class would appear to be a valid theoretical class.[22] Appellee's answers to appellants' interrogatories, however, reveal that in reality there are no members of the class. Appellant asked appellee to identify all mortgagors whose loans had been paid, but whose mortgages were not satisfied of record within 45 days of payment. Appellee listed 53 such mortgagors. Appellants also asked if appellee had informed these mortgagors that a mortgage was to be recorded. Appellee answered, yes. Thus it appears that no one—at least, none of the 53 mortgagors identified as potential class members—is in a situation similar to appellants' situation. Appellants undertook no discovery to show that appellee's answers were wrong, or incomplete, and in fact, as has been mentioned, appellant Edward Bell stated in his deposition that he personally knew of no other persons similarly situated. Thus although a theoretical class exists, on this record there are no members of the class, and a class action is obviously inappropriate.

The third possible class is a group of mortgagors whose mortgages were not marked satisfied within 45 days of request and tender, actual or constructive, that

21. Whether this is a valid interpretation of the statute is not now before us since "[w]hether a suit should proceed as a class action is independent of the question whether plaintiffs have stated a cause of action or whether they can prevail on the merits." *Pincus v. Mutual Assur. Co.*, 457 Pa. 94, 97, 321 A.2d 906, 908 (1974); *Piltzer v. Independence F. S. & L. Ass'n*, 456 Pa. 402, 405, 319 A.2d 677, 678 (1974).

22. Interestingly, the element of lack of knowledge is not alleged in paragraph two of the complaint which purports to be a description of the class. We shall read the complaint as a whole, however.

is to say, a class comprising the two classes that have been discussed. Even assuming this class, however, this action cannot be properly maintained as a class action because there would be crucial issues of fact not shared by all class members and not susceptible of just resolution in a single action. *Klemow v. Time, Inc., supra; See Ross v. Shawmut Development Corp.*, 460 Pa. 328, 333 A.2d 751 (1975). The issue of fact crucial to those members who had made actual request and tender would be the date of the request and tender. The issue crucial to those who had made constructive request and tender would be lack of knowledge of the recording of the mortgage. If these two separate lines of proof were confused, an injustice would result.

The lower court was therefore correct in dismissing the class aspects of this action and permitting the individual action to continue.

 A word of caution should be added, however, about sustaining preliminary objections to a class action without leave to amend the complaint. Here, that decision was proper because after the discovery was completed it was clear that no amendment could allege a class that appellants could properly represent. In other cases, however, where the discovery uncovers information that might enable adequate allegations, leave to amend should be freely given. *Klemow v. Time, Inc., supra.*

The order of the lower court is affirmed.